UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

THOMAS MATHES,                                )
         Plaintiff,                          )
                         )
     vs.                                         )         1:07-cv-1004-LJM-TAB
                         )
MICHAEL J. ASTRUE, Commissioner               )
of the Social Security Administration,        )
         Defendant.

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Thomas L. Mathes ("Mathes"), requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), denying Mathes's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  The Court rules as follows.

## I. BACKGROUND

Mathes, born on September 14, 1960, was forty-six years old at the time of the Administrative Law Judge's, Stephen E. Davis (the "ALJ"), decision on October 20, 2006.  R. at 589, 25.  Mathes has an eleventh-grade education and is also ASE-certified as a diesel mechanic. R. at 594.  Since June 30, 2003, Mathes has alleged disability due to back problems, pain resulting from a steel pin in his right shoulder, anxiety, Osgood Schlatter disease in his right leg, and Hepatitis C.  R. at 45, 132.  Mathes also testified to shortness of breath which prevents him from walking very far.  R. at 593.

1

Around the year 1999, or approximately seven years before his administrative hearing, Mathes had surgery on three deteriorating discs in his back.  R. at 590.  According to Mathes, Dr. Huler "hollowed out the backbone but didn't fuse it together" because Mathes would have been "in too much pain that [he would] wear out the top half."  R. at 597, 590.  Now, however, Dr. Huler says that it needs to be fused together.  *Id.*  Mathes testified that if he had the money, he would have Dr. Huler perform the second back surgery in a heartbeat.  R. at 596-97.  He also testified to sometimes using a cane because he has trouble walking, standing, and sitting.  R. at 593.

In January 2003, an MRI of Mathes's back showed that he suffered from multilevel degenerative disc disease, a small annular tear with some disc bulging, and moderate to severe spinal canal narrowing.  R. at 218.  On February 4, 2003, Dr. Donald Baird, D.O. ("Dr. Baird") excused Mathes from work for three weeks due to lumbar disc disease.  R. at 226.  Dr. Baird then extended Mathes's excuse from work until March 26, 2003.  R. at 243.  However, on March 24, 2003, Dr. Baird released Mathes from his work restriction, per Mathes's request, noting that Mathes did not follow Dr. Baird's treatment plan.  R. at 333.  Dr. Baird then terminated Mathes as a patient.  *Id.*

In April 2003, Mathes was treated in the emergency room for an injury to his right hip after falling off a motorcycle.  R. at 281-82.  Afterwards, Mathes was instructed to not lift more than ten pounds.  R. at 283.

In July 2003, Mathes was treated after he slipped on a wet floor at K-Mart.  R. at 581.  He described a twisting injury that caused pain.  *Id.*  The examining doctor also noted "mild narrowing" and "mild degenerative change."  *Id.*

In August 2003, Mathes was found asleep in his vehicle, which was parked on someone's yard.  R. at 518.  The police found nearly empty Xanax and Hydrocodone bottles in Mathes's car,

although these prescriptions had been refilled one day prior.  *Id.*  Mathes's urine also tested positive for cocaine opiate.  *Id.*  In 2004, Mathes admitted that he used crack cocaine "pretty much every day."  R. at 85.

In March 2004, Mathes fell off a bulldozer and landed with a 150 lb. iron pin on his chest. R. at 422-23.  He complained of chest, neck and elbow pain but no shortness of breath.  R. at 428. However, a both a chest x-ray and CT scan of his abdomen were normal.  R. at 429.  Also in March 2004, Mathes underwent a vocational capacity assessment.  R. at 181.  This assessment determined that Mathes could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and could sit (with normal breaks) for a total of about six hours in an eight-hour workday.  R. at 182.  It was also determined that Mathes could occasionally lift fifty pounds, frequently lift twenty-five pounds, and was unlimited in pushing and/or pulling (including operation of hand and/or foot controls).  R. at 182.

In May 2004, Dr. Nancy Ingwell, Ph.D. ("Dr. Ingwell"), performed a psychological evaluation on Mathes.  When asked to describe his anxiety attacks, Mathes replied, "I can't concentrate on what the answer is when you're asking a question."  R. at 83.  Mathes also said that he has trouble sleeping and concentrating and has a poor appetite and memory.  R. at 83-84.  He also complained of back pain and depression and admitted to substance abuse, including the use of crack cocaine.  R. at 85.  Dr. Ingwell reported that Mathes had "an attitude" and gave brief and minimal answers.  Overall, Mathes's index scores on the Wechsler Memory Scale-Third Edition were extremely low, but Dr. Ingwell felt that these statistics were a valid and reliable measure of Mathes's memory skills at the time of testing.  R. at 87.

3

Mathes also underwent a physical examination in May 2004 by Dr. Phillip S. Budzenski, M.D. ("Dr. Budzenksi").  R. at 189-95.  Dr. Budzenski noted that Mathes had a normal gait, could bend over and attend to his shoe, and was able to get on and off the examination table.  R. at 190. Mathes could walk on his toes and heels, stand on either leg, and perform a full squat maneuver without difficulty.  R. at 193.  The doctor also reported that Mathes could follow directions and commands without difficulty and that his memory for recent and remote medical events was preserved.  R. at 190.  Dr. Budzenski admitted that Mathes's examination was most consistent with back strain, but opined that he should be able to perform medium work eight hours a day.  R. at 193-94.

In October 2005, Mathes was admitted to St. Francis Hospital for a persistent cough.  R. at 573.  The doctor also took views of Mathes's lumbar spine, noting narrowing and progressive degenerative disk disease.  *Id.*

At the hearing, Mathes testified to breathing problems and shoulder pain.  Mathes is a smoker and admitted to smoking as many cigarettes as he can get, "maybe two packs a day."  R. at 85.  He also testified that there is a golf-ball sized spot on his lung.  R. at 596.  His doctor prescribed an Albuterol inhaler, but Mathes claimed that he did not have the money to pay for it.  *Id.*  Mathes also testified to having a steel pin placed in his right shoulder when he was about twenty-four or twenty-five years of age.  R. at 595.  He claimed that his right shoulder causes him a lot of pain, and that he can only bring his arm back about seventy percent.  *Id.*

Mathes last worked as a diesel mechanic two and a half or three years before the hearing for Crete Carrier Corporation, but he was placed on temporary leave because of his back problems and then was terminated for "laying off too much."  R at 589-590.  He then collected workman's

4

compensation.  R. at 591.  Since this termination, Mathes has had two temporary jobs.  *Id.*  About a year before the hearing, Mathes was hired by a company to do janitorial work at Conseco Field House ("Conseco"), but his back continued to bother him.  R. at 591-92.  As a result, he only worked at Conseco for about a week and a half.  R. at 592.  Three weeks later, the same janitorial company attempted to place Mathes at another location doing similar work, but he could not do it.  *Id.*

## II. DISABILITY AND STANDARD OF REVIEW

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423.  "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  In determining whether a claimant is disabled, the ALJ applies the five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5. If the claimant can perform other work given the claimant's residual functional capacity, age, education

The burden of proof is on the claimant for the first four steps, then shifts to the Commissioner at the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits.  When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner.  *See, e.g., Henderson v. Apfel*, 179 F.3D 507, 512 (7th Cir. 1999).  This Court will sustain the ALJ's findings if they are supported by substantial evidence.  42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).  In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Id.*  While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted."  *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning."  *Diaz*, 55 F.3d at 307.  An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence."  *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

6

## III. <u>DISCUSSION</u>

### A. THE ALJ'S FINDINGS

The ALJ conceded that Mathes satisfies steps one and two of the disability analysis.  R. at 19.  Although he has worked some since his alleged onset date in 2003, Mathes has not engaged in substantial gainful activity.  *Id.*  Also, his ability to perform basic work activities is hindered by impairments, and there is objective medical evidence to support this finding.  *Id.*

However, at the third step, the ALJ found that Mathes's severe impairments are not attended by medical signs or laboratory findings that met or equaled in severity any impairment contained in the Listing of Impairments.  *Id.*  Because Mathes alleged pain so severe as to prevent all work activity and because the objective evidence did not support this limitation, the ALJ considered evidence of Mathes's symptoms' intensity, persistence and debilitating effects.  *Id.*  At the fourth step, the ALJ assessed Mathes's residual functional capacity ("RFC") based on objective medical evidence and statements from Mathes and others regarding his medical history, treatment, and ability to work and concluded that Mathes is capable of sedentary exertional level work, defined as follows:

> lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

R. at 23.

By concluding that Mathes is only capable of sedentary exertional level, the ALJ also determined that Mathes could not perform his past relevant work because it involved a medium to heavy exertional level.  *Id.*  The burden then shifted to the ALJ to show that there are plenty of other existing jobs that Mathes can perform.  At this fifth step, the ALJ found thousands of jobs in Indiana

that involved only sedentary exertional level work.  *Id.*  After this analysis, the ALJ concluded that Mathes was not disabled and not entitled to disability under the Social Security Act.  R. at 24-25.

## B. MATHES'S ARGUMENT ON APPEAL

Mathes asserts that the ALJ's decision, which became the decision of the Commissioner, should be reversed for several reasons.  Specifically, Mathes argues that the ALJ mischaracterized and failed to consider significant medical records, failed to assess symptoms, failed to contact Mathes's treating physician for additional information, and failed to provide a function-by-function assessment of mental functioning.

Mathes argues that the ALJ's denial does not fully recognize the severity of his back  pain. While the opinion may have omitted some medical descriptions of Mathes's back problems, the ALJ did examine Exhibit 1F-108, the MRI of Mathes's lumbar spine and diagnoses, which includes most of the language pointed out by Mathes in his brief.  R. at 20, 218.  Moreover, it appears that the ALJ did acknowledge the Indiana University Radiologist's impression, by noting "multilevel degenerative disc disease with significant neuroforaminal and lateral recess narrowing at L5-S1."  R. at 20. Furthermore, it was unnecessary to list all the clinical descriptions of Mathes's back problems given the ALJ's in-depth discussion of examinations and diagnoses.  R. at 20-22.  Therefore, the Court concludes that the ALJ's denial did not mischaracterize or underestimate Mathes's back problems.

Mathes also claims that the denial did not consider certain relevant exhibits, namely Exhibits F and G, and thereby violated SSR 96-8p.  These exhibits were submitted to the ALJ after the August 14, 2006, hearing but before the October 20, 2006, decision.  R. at 506, 568, 587, 25.  As Mathes notes, the ALJ did not explicitly reference these exhibits in his opinion.  However, the fact

that the ALJ did not include them in his opinion does not mean that he failed to consider them. Although the ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson*, 999 F.2d at 181, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron*, 19 F.3d at 333. Furthermore, SSR 96-8p requires that all relevant evidence be assessed when determining RFC, including:

    1. Medical history;

    2. Medical signs and laboratory findings;

    3. The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g. frequency of treatment, duration, disruption to routine, side effects of medication);

    4. Reports of daily activities;

    5. Lay evidence;

    6. Recorded observations;

    7. Medical source statements;

    8. Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment;

    9. Evidence from attempts to work;

    10. Need for a structured living environment; and

    11. Work evaluations, if available.

SSR 96-8p. In this case, however, the ALJ did not violate SSR 96-8p because his opinion does consider all relevant evidence.

    Exhibits F and G include: documentation of a July 2003 slip and fall at K-Mart that resulted in shoulder and back pain; evidence from August 2003 of Mathes's substance abuse; and further

evidence of back pain from October 2005.  R. at 576, 518, 574.  Although there is a report of "mild narrowing" and "mild degenerative change," these exhibits do not present any additional significant evidence to warrant a finding of disability or discussion of the exhibits in the ALJ's opinion.  R. at 582.  Because the ALJ's opinion did mention evidence along the same lines as that presented in Exhibits F and G, this Court is able to review the decision for substantial evidence to support the denial of Mathes's benefits, which is all that is required.  *See Herron*, 19 F.3d at 337 ("When the ALJ fails to mention an entire line of evidence in his decision, we are unable to conduct a meaningful review because we cannot establish if substantial evidence supported the denial of benefits").  Moreover, even if these exhibits did contain additional useful information for Mathes's case, they were submitted to the Appeals Council with Mathes's request for review and therefore could have been given greater consideration before judicial review.  R. at 6.  For these reasons, the Court concludes that the ALJ's omission of certain exhibits does not violate SSR 96-8p.

Mathes also asserts that the ALJ's denial fails to properly assess his symptoms and thereby violates SSR 96-7p.  In addition to the objective medical evidence, the ALJ must consider Mathes's subjective complaints:

> Symptoms, such as pain, sometimes suggest a greater severity of impairment that can be shown by objective medical evidence alone, [consequently] the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

SSR 96-7p.  Moreover, "the ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence."  *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).  However, a claimant's subjective complaints alone are not sufficient to carry a disability

claim.  20 C.F.R. § 404.1529(a).  In this case, the ALJ did not violate SSR 96-7p because he gave appropriate weight to Mathes's subjective statements in conjunction with the objective medical evidence.

In the absence of objective medical evidence to support Mathes's claim, the ALJ considered Mathes's testimony and subjective complaints in his decision.  R. at 20.  The ALJ expressly acknowledged, "[S]ince the objective evidence does not support the degree of limitation of which [Mathes] complains, other evidence must be considered to determine if [his] allegations can reasonably be accepted as consistent with the medical and other evidence."  R. at 19.  Indeed, the ALJ articulated the duration, location, and aggravating factors of Mathes's pain.  R. at 20 ("back surgery seven years ago . . . limited in sitting, standing and walking due to pain . . . shortness of breath which limits his walking . . . steel pin in his right shoulder which limits his range of motion . . . reported he is homeless").  Although there is no explicit discussion of Mathes's medications, the ALJ noted that he "uses little pain medication."  *Id.*  The ALJ later reasoned, "There are clearly some limitations established by the record and these have been taken into account in assessing his residual functional capacity, but I am not convinced that his subjective symptoms are severe enough to preclude all work activity."  R. at 22.  Given these considerations, the Court concludes that the ALJ gave appropriate weight to Mathes's symptoms in his decision.

Mathes's third argument is that the ALJ's failure to recontact Mathes's treating physician was unlawful.  As Mathes points out, when

> the evidence [the Commissioner] receive[s] from a [claimant's] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether a [claimant is] disabled, [the Commissioner] will need additional information to reach a determination or a decision . . . .  [The Commissioner] will first recontact [a claimant's] treating physician or psychologist or other medical

> source to determine whether the additional information [the Commissioner] need[s] is readily available.

20 C.F.R. §§404.1512(e) and 416.912(e) (2006).  However, in this case, the medical evidence was not inadequate to determine whether Mathes was disabled; therefore, there was no need for the ALJ to contact the treating physician for additional information.  The evidence sufficiently proved that Mathes was not disabled.  Frustrated by this conclusion, Mathes now argues that the ALJ failed to find any evidence showing disability.  However, it is not the ALJ's duty to seek such additional medical source testimony when there is sufficient evidence upon which to base a conclusion.  In fact, the ALJ must presume that Mathes's counsel put forth Mathes's strongest case, meaning that if such a medical source statement was available, it should have been submitted by Mathes in the first instance.  *See Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).  The only medical source statement submitted "imposes a temporary limitation" but suggested nothing to rise to the level of total disability.  R. at 22.  Furthermore, the record does not indicate that Mathes was regularly seeing any certain physician to treat his back pain.  Therefore, the Court concludes that the ALJ did not err when he failed to contact Mathes's physicians for more information.

Finally, Mathes argues that the ALJ did not provide a function-by-function assessment of Mathes's mental functioning as required by SSR 96-8p.  As noted by Mathes, SSR 96-8p requires the ALJ to discuss how he formulated the claimant's RFC in light of the evidence.  The ALJ satisfied the requirements of 96-8p here.  *See* R. at 20-23.  The ALJ provided a function-by-function analysis when he discussed Mathes's psychological evaluation in May 2004 and Mathes's allegations of mental disorders and also when he noted that Mathes "has not required psychiatric treatment or medications on any regular basis."  R. at 20, 22-23.

12

The ALJ recognized that Mathes "is independent" and "can function on a daily basis," which suggests that Mathes could remember locations, procedures and instructions in a work-like setting without special supervision.  In fact, a physical examination in 2004 by Dr. Budsenski revealed that Mathes could follow directions and commands without difficulty and that his memory for recent and remote medical events was preserved.  R. at 190.  Given this evidence, it was reasonable for the ALJ to find that Mathes was mentally capable of work  By rewording the examiner's statement that Mathes had "an attitude" during the examination, the ALJ did not suggest that the scores were invalid.  In fact, the ALJ acknowledged that Mathes's "extremely low" index scores on the WMS III "were felt to be reliable."  R. at 21.  The ALJ also noted that a lack of "longitudinal evidence of a memory problem."  R. at 22.  Moreover, there were no inconsistencies to explain because although Mathes had an attitude during the examination, the examining physician felt Mathes's scores were a valid representation of his mental abilities.  Therefore, the Court concludes that the ALJ did not fail to provide a function-by-function analysis of Mathes's mental functioning.

In summary, the ALJ's decision is supported by substantial evidence.  He provided a step-by-step analysis of his consideration both of the objective medical evidence and of Mathes's subjective symptoms so that this Court could "trace the path of his reasoning." *Diaz*, 55 F.3d at 307. He considered all relevant evidence and gave sufficient weight to symptoms in the absence of such evidence.  The ALJ did not breach his duty by not contacting a physician to find more evidence that may suggest disability. Beyond physical impairments, the ALJ appropriately considered Mathes's mental functioning and ability to perform basic work tasks.  For these reasons, the ALJ's decision is **AFFIRMED**.

IV. **CONCLUSION**

For the foregoing reasons, the final decision of the Commissioner of Social Security in this

case is **AFFIRMED**.  Final judgment shall be entered accordingly.

IT IS SO ORDERED this 21st day of May, 2008.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distributed electronically to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

14